Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV  89101
Telephone:  702.385.5544
Facsimile:  702.385.2741

*Attorneys for the Debtor*

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No.:  19-13366-MKN |
| | ) | |
| Islet Sciences, Inc., a Nevada corporation, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hearing Date: |
| | ) | Hearing Time: |
| | ) | |
| _____ | ) | |

## THE PLAN OF REORGANIZATION
## OF ISLET SCIENCES, INC., UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**TABLE OF CONTENTS**

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ...................................................................................................... 1
    A.    Rules of Interpretation, Computation of Time and Governing Law ................................... 1
    B.    Governing Law. ................................................................................................................ 8
    C.    Reference to Monetary Figures. ....................................................................................... 8
    D.    Controlling Document. ..................................................................................................... 8

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, PRIORITY TAX CLAIMS, AND PROFESSIONAL COMPENSATION .............................................................. 9
    A.    Administrative Claims ...................................................................................................... 9
    B.    DIP Facility Claims ........................................................................................................... 9
    C.    Priority Tax Claims .......................................................................................................... 10
    D.    Professional Compensation .............................................................................................. 10

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS .............................................................................................................. 10
    A.    Summary ........................................................................................................................... 10
    B.    Classification and Treatment of Claims and Equity Interests ........................................... 11
    C.    Discharge of Claims ......................................................................................................... 12

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ............................................................ 12
    A.    Presumed Acceptance of Plan ........................................................................................... 12
    B.    Voting Classes .................................................................................................................. 12
    C.    Acceptance by Impaired Classes of Claims ...................................................................... 12
    D.    Cramdown ......................................................................................................................... 13
    E.    Elimination of Vacant Classes .......................................................................................... 13

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................................... 13
    A.    General Settlement of Claims and Interests. ..................................................................... 13
    B.    Restructuring Transactions ................................................................................................ 13
    C.    The Reorganized Debtor. .................................................................................................. 14
    D.    Sourced of Consideration for Plan Distribution. ............................................................... 15
    E.    Corporate Existence. ......................................................................................................... 15
    F.    Vesting of Assets in the Reorganized Debtor ................................................................... 15
    G.    Corporate Action. ............................................................................................................. 15
    H.    New Organizational Documents. ....................................................................................... 16
    I.    New Equity Interests. ........................................................................................................ 16
    J.    Directors and Officers of the Reorganized Debtor. ........................................................... 16
    K.    Effectuating Documents; Further Transactions. ................................................................ 16
    L.    Certain Securities Law Matters. ........................................................................................ 17
    M.    Section 1146 Exemption. .................................................................................................. 17
    N.    Preservation of Causes of Action; Waiver of Avoidance Actions. ................................... 18
    O.    Closing the Chapter 11 Case. ............................................................................................ 18

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............ 18
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ....................... 18
    B.    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases ........... 19
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ..................... 19
    D.    Contracts and Leases Entered Into After the Commencement Date .................................. 20

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ............................................................. 20
    A.    Distributions for Claims Allowed as of the Effective Date................................................ 20
    B.    Distributions on Account of Claims Allowed After the Effective Date ............................. 20

C.    Delivery and Distributions and Undeliverable or Unclaimed Distributions ...................................20
D.    Compliance with Tax Requirements/Allocations.........................................................................22
E.    Timing and Calculation of Amounts to Be Distributed .................................................................23
F.    Setoffs .........................................................................................................................................23

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ................................................................................................................................23
A.    Resolution of Disputed Claims ...................................................................................................23
B.    Disallowance of Claims ..............................................................................................................24
C.    Amendments to Claims ...............................................................................................................25

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN .......................................................................................................................................................25
A.    Conditions Precedent to Confirmation.........................................................................................25
B.    Conditions Precedent to Consummation.......................................................................................25
C.    Waiver of Conditions ...................................................................................................................25
D.    Effect of Non-Occurrence of Conditions to Consummation ..........................................................25

ARTICLE X. SETTLEMENT, RELEASE AND RELATED PROVISIONS .................................................26
A.    Discharge of Claims and Termination of Interests........................................................................26
B.    Release of Liens. ..........................................................................................................................26
C.    Exculpation. .................................................................................................................................26
D.    Injunction. ....................................................................................................................................27
E.    Protections Against Discriminatory Treatment..............................................................................27
F.    Document Retention. ....................................................................................................................27
G.    Reimbursement or Contribution. ..................................................................................................27

ARTICLE XI. BINDING NATURE OF PLAN ..........................................................................................28

ARTICLE XII. RETENTION OF JURISDICTION......................................................................................28

ARTICLE XIII. MISCELLANEOUS PROVISIONS ..................................................................................29
A.    Payment of Statutory Fees ...........................................................................................................29
B.    Modification of Plan ....................................................................................................................29
C.    Revocation of Plan .......................................................................................................................29
D.    Successors and Assigns.................................................................................................................29
E.    Reservation of Rights...................................................................................................................29
F.    Further Assurances.......................................................................................................................30
G.    Severability .................................................................................................................................30
H.    Service of Documents...................................................................................................................30
I.    Filing of Additional Documents...................................................................................................30
J.    Default .........................................................................................................................................30

## THE PLAN OF REORGANIZATION
## OF ISLET SCIENCES, INC., UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Islet Sciences, Inc. ("**Debtor**"), the debtor and debtor-in-possession in the above-referenced case, proposes the following plan of reorganization (the "**Plan**") for the resolution of the outstanding claims against, and equity interests in, the Debtor. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code (as defined below). Reference is made to the Debtor's Disclosure Statement, for a discussion of the Debtor's history, business, results of operations, historical financial information, accomplishments during the Chapter 11 Cases (as defined below), projections and properties, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents, which are or will be filed with the Bankruptcy Court, that are referenced in this Plan or the Disclosure Statement.

# ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME,
## GOVERNING LAW AND DEFINED TERMS

A.      *Rules of Interpretation, Computation of Time and Governing Law*

1.      "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including, without limitation, success fees and Allowed Professional Compensation) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a), 331 or 503 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date by any Retained Professionals in the Chapter 11 Case, that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount.

2.      "*Administrative Claim*" means any Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code (excluding claims under section 503(b)(9) of the Bankruptcy Code), including, without limitation: (a) the actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the business of the Debtor; (b) Allowed Professional Compensation; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

3.      "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

4.      "*Allowed*" means, with respect to Claims or Equity Interests: (a) any Claim or Equity Interest, proof of which is timely Filed by the applicable Claims Bar Date (or which by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Equity Interest that is listed in the Schedules as of the Effective Date as not contingent, not unliquidated and not Disputed, and for which no Proof of Claim or Interest has been timely Filed; or (c) any Claim or Equity Interest Allowed pursuant to the Plan; *provided, however,* that with respect to any Claim or Equity Interest described in clause (a) above, such Claim or Equity Interest shall be considered Allowed only if and to the extent that (x) with respect to any Claim or Equity Interest, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) such an objection is so interposed and the Claim or Equity Interest shall have been Allowed for distribution purposes only by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor or the Reorganized Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

5.      "*Allowed Professional Compensation*" means all Accrued Professional Compensation allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

6.      "*Anderson Law*" means the Anderson Law Firm, Ltd., counsel to the committee of unsecured creditors.

7.      "*Assets*" means all of the Debtor's right, title and interest of any nature in property, wherever located, as specified in section 541 of the Bankruptcy Code.

8.      "*Avoidance Actions*" means any and all claims and causes of action which any of the Debtor, the debtor in possession, the Estate, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

9.      "*AT*" means Armstrong Teasdale, LLP, litigation counsel to the Debtor in the North Carolina Litigation.

10.      "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims (modified, as necessary, based on voting party in accordance with the Disclosure Statement Order) entitled to vote shall, among other things, indicate its acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

11.      "*Bankruptcy Code*" means Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Case, and to the extent of the withdrawal of any reference under section 157 of Title 28 of the United States Code and/or the Order of the United States District Court for the District of Nevada pursuant to section 157(a) of Title 28 of the United States Code, the United States District Court for the District of Nevada.

12.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Case, and to the extent of the withdrawal of any reference under section 157 of Title 28 of the United States Code and/or the Order of the United States District Court for the District of Nevada pursuant to section 157(a) of Title 28 of the United States Code, the United States District Court for the District of Nevada.

13.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 or any otherwise applicable statutory enactment or authorization and the general, local and chambers rules of the Bankruptcy Court.

14.      "*BHFS*" means Brownstein Hyatt Farber Schreck, LLP, the Debtor's prior bankruptcy counsel.

15.      "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16.      "*BHV*" means Brighthaven Ventures, LLC.

17.      "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

18.      "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Case, including through the Effective Date.

19.      "*Chapter 11 Case*" means the chapter 11 case pending for the  Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

20.      "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

21.    "*Claims Bar Date*" means, as applicable, (a) January 22, 2020, (b) the Governmental Bar Date, or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claims.

22.    "*Claims Objection Bar Date*" means, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims; *provided, however,* that in no event shall the Claims Objection Bar Date be greater than 120 days after the Effective Date with respect to any General Unsecured Claim in Class 4.

23.    "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court.

24.    "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

25.    "*Commencement Date*" or "*Petition Date*" means May 29, 2019, the date on which Debtor's bankruptcy case was commenced by the filing of an involuntary petition under 11 U.S.C. § 303 under chapter 7 of the Bankruptcy Code.

26.    "*Commission*" means the U.S. Securities and Exchange Commission.

27.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in Article IX hereof having been:  (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

28.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

29.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be continued from time to time.

30.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

31.    "*Consummation*" means the occurrence of the Effective Date.

32.    "*Creditor*" means a Holder of a Claim.

33.    "*Cure Claim*" means a Claim based upon the Debtor's default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor under sections 365 or 1123 of the Bankruptcy Code.

34.    "*Curiam*" means Curiam Investments 2 LLC.

35.    "*Debtor*" means Islet Sciences, Inc., in its capacity as a debtor in this Chapter 11 Case.

36.    "*Debtor in Possession*" means the Debtor, as debtor in possession in this Chapter 11 Case.

37.    "*Disclosure Statement*" means the *The Disclosure Statement for the Plan of Reorganization for Debtor Islet Sciences, Inc. Dated December 23, 2020*, as amended, supplemented or modified from time to time, including all exhibits and schedules attached thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

38.    "*Disclosure Statement Motion*" means that certain *Motion for Order (i) Approving The Disclosure Statement; (ii) Approving The Form Of Ballots And Proposed Solicitation And Tabulation Procedures; (iii) Fixing The Voting Deadline With Respect To The Debtor's Chapter 11 Plan; (iv) Prescribing The Form And Manner Of*

*Notice Thereof; (v) Fixing The Last Date For Filing Objections To The Chapter 11 Plan; (vi) Scheduling A Hearing To Consider Confirmation Of The Chapter 11 Plan; and (vii) Appointing SL As Solicitation And Tabulation Agent,* filed with the Bankruptcy Court on _____, as the Motion may be amended from time to time.

39.    "*Disclosure Statement Order*" means that certain *Order (i) Approving The Disclosure Statement; (ii) Approving The Form Of Ballots And Proposed Solicitation And Tabulation Procedures; (iii) Fixing The Voting Deadline With Respect To The Debtor's Chapter 11 Plan; (iv) Prescribing The Form And Manner Of Notice Thereof; (v) Fixing The Last Date For Filing Objections To The Chapter 11 Plan; (vi) Scheduling A Hearing To Consider Confirmation Of The Chapter 11 Plan; and (vii) Appointing SL As Solicitation And Tabulation Agent,* approved by the Bankruptcy Court on _____, as the order may be amended from time to time.

40.    "*DIP Facility*" means the postpetition financing made available to the Debtor by WSF.

41.    "*DIP Facility Claim*" means Claims arising out of the DIP Facility.

42.    "*DIP Facility Motion*" means collectively the motions at Docket Nos. 11 and 361 seeking approval of post-petition financing.

43.    "*Disputed Claim*" means, with respect to any Claim or Equity Interests, any Claim or Equity Interests listed on (a) the Claims Register that is not yet Allowed, or (b) Scheduled as Disputed.

44.    "*Distribution Agent*" means the Debtor.

45.    "*Distribution Record Date"* means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

46.    "*Effective Date*" means the day that is the first Business Day occurring at least ten (10) days after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article IX.B hereof have been: (i) satisfied; or (ii) waived pursuant to Article IX.C hereof.

47.    "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

48.    "*Equity Interest*" means any: (a) equity security in the Debtor, including all issued, unissued, authorized, or outstanding shares of stock, together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto or (b) partnership, limited liability company, or similar interest in the Debtor.

49.    "*Estate*" means, as to the Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

50.    "*Exchange Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state or local law.

51.    "*Exculpated Parties*" means, collectively, and in this case in its capacity as such: (a) the Debtor and the Reorganized Debtor; (b) any official committees appointed in the Chapter 11 Cases and each of their respective members; (c) WSF; (d) Curiam; and (e) with respect to each of the foregoing entities, each such Entity's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, funds, portfolio companies, management companies, consultants, financial advisors, and attorneys (each in their capacity as such).

52.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

53.    *"Existing Equity Interests"* means any Equity Security, including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profit interests of the Debtor, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

54.    *"Fee Claim"* means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

55.    *"File"* or *"Filed"* means file, filed or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

56.    *"Final Order"* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

57.    *"General Unsecured Claim"* means claim against the Debtor that is not (i) an Administrative Claim, (ii) a Priority Tax Claim, (iii) Priority Non-Tax Claim, or (iv) Secured Claim.

58.    *"Governmental Bar Date"* means March 16, 2020.

59.    "*Green*" means James Green.

60.    "*Holder*" means an Entity holding a Claim or an Equity Interest.

61.    *"Impaired"* means any Claims in an Impaired Class.

62.    "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

63.    "*Indemnified Parties*" means the Distribution Agent, and its respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives and principals.

64.    "*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when distributions under the Plan shall commence.

65.    "*Involuntary Petition*" means the involuntary petition for relief filed by the Petition Creditors on the Petition Date.

66.    "*JPF*" means JPF Securities Law, LLC, the Debtors securities law counsel.

67.    "*Litigation Financing*" means the prepetition and postpetition credit facility made by Curiam to the Debtor secured by Debtor's recovery, if any, in the North Carolina Litigation.

68.    "*Motion to Convert*" means the motion to convert the case to one under Chapter 11 at Docket No. 9.

69.    "*NERA*" means the National Economic Research Associates, Inc., the Debtor's expert witness for purposed of the North Carolina Litigation.

70.    "*New Board*" means the board of directors or the board of managers of the Reorganized Debtor.

71.    "*New Equity" or "New Equity Interests*" means the equity in the Reorganized Debtor to be authorized, issues or reserved on the Effective Date of the Plan, which shall constitute all of the direct or indirect equity of the Reorganized Debtor.

72.    "*New Equity Holders*" means Holders of Claims entitled to receive New Equity under Article III of the Plan and the participants in the Management Incentive Plan.

73.    "*New Organizational Documents*" means the form of the certificates or articles of incorporation, bylaws, and applicable shareholder agreements or such other applicable formation documents of Reorganized Debtor.

74.    "*North Carolina Litigation*" means case 5:19-cv-00145-D, brought by Islet against Wilkison, Green, BHV and Avolynt, for breach of contract, breach of fiduciary duty, unjust enrichment, fraud and constructive trust, currently being litigated in the Eastern District of North Carolina.

75.    "*North Carolina State Court Litigation*" means the case brought by Islet against Green, Wilkison, and BHV in the Court for the State of North Carolina, Superior Division.

76.    "*Periodic Distribution Date"* means the first Business Day that is as soon as reasonably practicable occurring no later than approximately 180 days after the Initial Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring no later than 180 days after the immediately preceding Periodic Distribution Date.

77.    "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

78.    "*Petition Date"* means May 29, 2019, the date on which the Petitioning Creditors filed the Involuntary Petition.

79.    "*Petitioning Creditors"* means Green, Wilkison, BHV, Kevin M. Long, VACO Raleigh, LLC, Steve Delmar, and Apex Biostatistics, Inc.

80.    "*Petitioning Creditors Equity Pool"* means the New Equity allocated to the Petitioning Creditors held in reserve by the Reorganized Debtor pending the outcome of the North Carolina Litigation for the for satisfaction of any Judgment arising out of North Carolina Litigation, if any, and the North Carolina State Court Litigation.

81.    "*PKF*" means PKF San Diego, tax accountant to the Debtor.

82.    "*PPP*" means Portage Point Partners, LLC, Debtor's financial advisor in the Chapter 11 Case.

83.    "*Plan*" means this *Plan of Reorganization of the Debtor Under Chapter 11 of the Bankruptcy Code* dated October _____, 2020, as amended, supplemented or modified from time to time, including, without limitation, the Plan Supplement, which is incorporated herein by reference.

84.    "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules.

85.    "*Priority Non-Tax Claim*" means any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

86.     "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

87.     "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

88.     "*Proof of Interest*" means proof of Equity Interest filed against the Debtor in the Chapter 11 Case.

89.     "*Pro Rata*" means the proportion that an Allowed Claim or Equity Interest in a particular Class bears to the aggregate amount of Allowed Claims or Equity Interests in that Class, or the proportion that Allowed Claims or Equity Interests in a particular Class bear to the aggregate amount of Allowed Claims or Equity Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Equity Interests under the Plan.

90.     "*Protective Order*" means the Order on Motion for Protective Order at Docket No. 134 executed by the Petitioning Creditors, the UCC, the individual members of the UCC, and the Debtor.

91.     "*Record Date*" means the close of business on 90 days from the Effective Date.

92.     "*Reorganized Debtor*" means the Debtor, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

93.     "*Restructuring Transactions*" means transactions necessary or appropriate to affect a restructuring of Debtor's businesses or the overall organizational structure of the Reorganized Debtor as set forth in Section III.E.2 of the Disclosure Statement.

94.     "*Retained Professional*" means any Entity: (a) employed in this Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

95.     "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial compliance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

96.     "*Schwartz Law*" means Schwartz Law, PLLC, bankruptcy counsel to the Debtor.

97.     "*Secured*" means a Claim secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is secured pursuant to section 365(j) of the Bankruptcy Code, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, in each case to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

98.     "*Securities Act*" means the United States Securities Act of 1933, as amended.

99.     "*Signature*" means Signature Analytics, accountant to the Debtor.

100.    "*Solicitation Deadline*" means the close of business on _____.

101.    "*Stifel*" means Stifel Financial Corp.

102.    "*Tort Claim*" means any Claim that has not been settled, compromised or otherwise resolved that: (a) arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal

theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to protection of human health, safety or the environment.

103.    "*UCC*" means the committee of unsecured creditors.

104.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code. "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

105.    "*Unimpaired Class*" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

106.    "*Unimpaired Claim*" means any Claim in an Unimpaired Class.

107.    "*Valuation*" means the valuation prepared by the Debtor's valuation professionals, Portage Point Partners, attached as Exhibit B to the Disclosure Statement.

108.    "*Voting Classes*" means impaired Classes entitled to vote found in Article III. B. of the Plan.

109.    "*Voting Deadline*" means _____, 2020 at 5:00 p.m. prevailing Pacific Time for all Holders of Claims, which is the date and time by which all Ballots must be received by the Debtor in accordance with the Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court with respect to any Voting Class.

110.    "*Wilkison*" means William Wilkison.

111.    "*WM*" means Williams Mullen, the Debtor's local counsel in the North Carolina Litigation.

112.    "*WSF*" Western States Funding, LLC.

B.    *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Nevada, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

C.    *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

D.    *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control. In the event of any inconsistency between the Plan or Plan Supplement, on the one hand, and the Confirmation Order on the other hand, the Confirmation Order shall control.

# ARTICLE II.

## ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, PRIORITY TAX CLAIMS, AND PROFESSIONAL COMPENSATION

A.    *Administrative Claims*

Each Holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Claim in Cash (a) on or as soon as reasonably practicable after the Effective Date, (b) if such Claim is Allowed after the Effective Date, on or as soon as reasonably practicable after the date such Claim is Allowed, or (c) upon such other terms as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and such Holder or otherwise upon an order of the Bankruptcy Court; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Cases, other than those liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents related to such transactions, and holders of claims related to such ordinary course liabilities are not required to File or serve any request for payment of such Administrative Claims.  Allowed Administrative Claims shall be paid, the extent necessary, from the proceeds of the refinancing of the Debtor's assets.

B.    *DIP Facility Claims*

Pursuant to the DIP Facility Order and in accordance with Sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, WSF holds a super priority administrative claim against the Debtor's estate arising out of the DIP Facility.  DIP Facility Claim, as it may be amended, shall be deemed Allowed as of the Effective Date in an amount equal to (a) the principal amount outstanding under the DIP Facility on such date, (b) all accrued and unpaid interest thereon to the date of payment, and (c) all accrued and unpaid fees, expenses, and noncontingent indemnification obligations payable under the DIP Facility and the DIP Financing Order.

Except to the extent that a holder of an Allowed DIP Facility Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed DIP Facility Claim shall be Paid in Full. As used in this paragraph, "Paid in Full" shall mean each holder of an Allowed DIP Facility Claim shall receive the indefeasible repayment in full in Cash or New Equity Interests —as set forth in Section 5 of the DIP Facility Agreement—of all obligations (including principal, interests, fees, expenses, indemnities) under the DIP Facility Agreement.  WSF shall receive 11% of the New Equity, which is inclusive of its WSF's principal, interest, costs and reasonable legal fees.

1.    Bar Date for Administrative Claims

Except as otherwise provided in this Article II.A hereof, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 45 days after the Effective Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims, including, without limitation, Holders of Claims for liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims who assert that such claims constitute Administrative Claims, that do not File and serve such a request by the applicable Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtor or any Reorganized Debtor or its Estate and property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Reorganized Debtor and the requesting party by the later of (a) 120 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by the Bankruptcy Court and/or on motion of a party in interest approved by the Bankruptcy Court.

C.    *Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim:  (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtor or Reorganized Debtor, as applicable, and such Holder; *provided, however,* that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Commencement Date, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by a particular taxing authority, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such claim shall be paid in full in cash in accordance with the terms of any agreement between the Debtor and such holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

D.    *Professional Compensation*

1.    <u>Professional Compensation and Reimbursement Claims</u>

Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Reorganized Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 60 days after the Effective Date; *provided* that the Reorganized Debtor shall pay Retained Professionals or other Entities in the ordinary course of business for any work performed after the Confirmation Date. Objections to any Fee Claim must be Filed and served on the Reorganized Debtor and the requesting party by 14 days after the Filing of the applicable request for payment of the Fee Claim.  To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.  Each Holder of an Allowed Fee Claim shall be paid by the Reorganized Debtor in Cash within five (5) Business Days of entry of the order approving such Allowed Fee Claim.

# ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.    *Summary*

1.    This Plan constitutes the chapter 11 plan of reorganization for the Debtor.  Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims against the Debtor are placed in Classes for the Debtor. Class 4 consists of Equity Interests.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor have not classified Administrative Claims and Priority Tax Claims, as described in Article II.

2.    The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3.    <u>Summary of Classification and Treatment of Classified Claims and Equity Interests</u>

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|

| Class | Claim | Status | Voting Rights |
|:-----:|-------|:------:|:-------------:|
| 1 | Secured Claim of Curiam Investments | Impaired | Entitled to Vote |
| 2 | Petitioning Creditors Claims | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Equity Interests | Impaired | Entitled to Vote |

B.  *Classification and Treatment of Claims and Equity Interests*

    1.  <u>Class 1 – Secured Claim of Curiam Investments</u>

        (a)  *Classification*: Class 1 consists of the Secured Claim of Curiam Investments against the District Court Case and proceeds therefrom.

        (b)  *Treatment*: The Holder of the Allowed Class 1 Claim shall be paid in accordance with the Terms of the Litigation Financing, as amended. Notwithstanding Article X.B. hereof, any prepetition security interest vested in the Holder of Class 1 claim shall remain in effect on the Effective Date.

        (c)  *Voting*: Class 1 is impaired and entitled to vote under the terms of the Plan.

    2.  <u>Class 2 – Petitioning Creditors' Claims</u>

        (a)  *Classification*: Class 2 consists of the Petitioning Creditors' Claims.

        (b)  *Treatment*: Subject to the outcome of the North Carolina Litigation, and except to the extent that a Holder of an Allowed Class 2 Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Class 2 Claim, each Holder thereof shall receive the Pro Rata of 0.4% of the New Equity in the Reorganized Debtor, pursuant to Section 1145 of the Bankruptcy Code, in the amount equal to the dollar value of their Claim as set by the Bankruptcy Court. Payment of any Holder of a Class 2 Claim is subject to the terms set forth in Sections 2(i) through 2(iii), each of which precondition is subject to the entry of a final, non-appealable order in the North Carolina Case.

            (i)  If the Petitioning Creditors are successful in the North Carolina Litigation, the Petitioning Creditors Equity Pool shall be transferred Pro Rata to the Holders of the Allowed Petitioning Creditors Claims;

            (ii)  If the Reorganized Debtor is successful in the North Carolina Litigation and the Petitioning Creditors Claims are reduced to zero, the Petitioning Creditors Equity Pool shall be distributed to the Debtor's then existing Equity Holders on a Pro Rata basis; or

            (iii)  If the result of the North Carolina Litigation leaves the Petitioning Creditors with reduced Claims against the Estate, the Petitioning Creditors Equity Pool shall be reduced to the corresponding amount of the reduced Claims; and

                (A) the Petitioning Creditors shall receive a Pro Rata distribution of the reduced Petitioning Creditors Equity Pool; and
                (B) the remaining New Equity held in the Petitioning Creditors Equity Pool will be distributed to the Debtor's then existing Equity Holders on a Pro Rata basis.

      (c)     *Voting*: Class 2 is an impaired Class, and the Holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

3.     <u>Class 3 – General Unsecured Creditors</u>

      (a)     *Classification*: Class 3 consists of General Unsecured Claims.

      (b)     *Treatment*: Except to the extent that a Holder of an Allowed Class 3 Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Class 3 Claim, on the Effective Date, each Holder thereof shall receive the Pro Rata value of 1.6% of the New Equity in the Reorganized Debtor, pursuant to Section 1145 of the Bankruptcy Code, in the amount of the cash value of their Claim as set by the Bankruptcy Court.

      (c)     *Voting*: Class 3 is an impaired Class, and the Holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

4.     <u>Class 4 – Equity Interests in the Debtor.</u>

      (a)     *Classification:* Class 4 consists of all Equity Interests.

      (b)     *Treatment:* In full and final satisfaction, settlement, release, and discharge of, and in exchange for each of the Equity Interests, on the Effective Date, the Holders thereof shall receive their Pro Rata value of 87% of shares of the New Equity Interests after the satisfaction of the Allowed Claims in Classes 2 and 3, in proportion to each Holder's Equity Interest ownership on the Record Date.

      (c)     *Voting:* Class 4 is an Impaired Class, and the Holder of a Class 4 interest is entitled to vote for or against the Plan.

C.     *Discharge of Claims*

     Pursuant to section 1141(c) of the Bankruptcy Code, all Claims and Equity Interests that are not expressly provided for and preserved herein shall be extinguished upon Confirmation.  Upon Confirmation, the Debtor and all property dealt with herein shall be free and clear of all such claims and interests, including, without limitation, liens, security interests and any and all other encumbrances, except as provided in the Plan.

# ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.     *Presumed Acceptance of Plan*

     No class of Claims or Interests is presumed to accept the Plan.

B.     *Voting Classes*

     Each Holder of an Allowed Claim as of the Record Date in each of the Voting Classes (Classes 1, 2, 3 and 4) shall be entitled to vote to accept or reject the Plan.

C.     *Acceptance by Impaired Classes of Claims*

     Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar

amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

D.      *Cramdown*

The Debtor requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan in accordance with Article XIII.B hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

E.      *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

# ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests.*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims and Interests and controversies resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtor and its Estate. Distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be final.

The Effective Date of the Plan shall occur once the Confirmation Order becomes a Final Order.

B.      *Restructuring Transactions*

On or before the Effective Date, and pursuant to the Plan, the Debtor and the Reorganized Debtor shall enter into such restructuring transactions (the "**Restructuring Transactions**") and shall take any actions as may be necessary or appropriate to affect a restructuring of its businesses or the overall organizational structure of the Reorganized Debtor.  Upon the Effective Date, the Debtor's primary Restructuring Transactions will be to issue the New Equity to Classes 2, 3 and 4 based on their Pro Rata share of the value of the Reorganized Debtor and implement the Litigation Financing, as amended.

On the Effective Date, all property of the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances. To the extent provided in the Plan the Debtor may be deemed dissolved in accordance with applicable law, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. The Reorganized Debtor shall be the issuer of New Equity to the applicable Holders of Claims and Interests as set forth herein.

The Restructuring Transactions may include one or more sales, mergers, consolidations, restructurings, conversions, dissolutions, transfers or liquidations as may be determined by the secured claim holders to be necessary

or appropriate to fully effectuate the transfer of the New Equity Interests. The actions to effect the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable law; (5) all transactions necessary or appropriate to provide for the purchase of substantially all of the assets or Interests of the Debtor by the Reorganized Debtor, which purchase, if applicable, may be structured as a taxable transaction for United States federal income tax purposes; and (6) all other actions that the applicable parties determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan in each case of clauses (1) through (6).

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

To the extent that any such Restructuring Transactions result in the assignment of any Executory Contract or Unexpired Lease assumed under the Plan to a party other than the Debtor which was originally a party to such Executory Contract or Unexpired Lease (including such Debtor as Reorganized Debtor), the Debtor shall follow the procedures in Article VI of the Plan for the assignment of such Executory Contracts and Unexpired Leases under section 365 of the Bankruptcy Code. The chairman of the board of directors, president, chief executive officer, chief financial officer, any executive vice-president or senior vice-president, member or manager or any other appropriate officer of each Debtor, (as applicable), shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of this Plan and the Restructuring Transactions. The secretary or assistant secretary of the appropriate Debtor and of a Reorganized Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

On or before the Effective Date, and pursuant to the Plan, the Debtor and the Reorganized Debtor, as applicable, shall take any actions as may be necessary or appropriate to affect a restructuring of its businesses or the overall organizational structure of the Reorganized Debtor. As of the date hereof, the actions to affect the Restructuring Transactions may include:

- the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree;
- the filing of appropriate certificates or articles of formation, reformation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and
- all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions.

C.      *The Reorganized Debtor.*

On the Effective Date, the New Board shall be established and Mr. John Steel, IV shall be appointed the Chief Executive Officer and Chairman of the Board, and the Reorganized Debtor shall adopt its New Organizational Documents. The Reorganized Debtor shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

D.      *Sourced of Consideration for Plan Distribution.*

On the Effective Date, upon cancellation of the prepetition Equity Interests, the Reorganized Debtor shall issue the New Equity directly or indirectly to Holders of Claims and Equity Interests to the extent provided in the Plan. The issuance of the New Equity shall be authorized without the need for any further corporate action and without any further action by any party. The terms of the New Equity shall be governed by the Shareholder Agreement and the New Equity Documentation, as applicable.

All of the New Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

E.      *Corporate Existence.*

The Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

F.      *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided herein or in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of the Estate (including, without limitation, Causes of Action) and any property acquired including by the Debtor pursuant hereto shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges or other encumbrances.  Except as may be provided herein, on and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor shall pay the charges that it incurs after the Effective Date for Retained Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Retained Professional fee applications) without application to the Bankruptcy Court.

G.      *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) adoption or assumption, as applicable, of any employment obligations; (2) selection of the directors, officers, or managers for the Reorganized Debtor; (3) the distribution of the New Equity; (4) implementation of the Restructuring Transactions; (5) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (6) adoption of the New Organizational Documents; (7) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (8) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Equity Security Holders, directors, officers, or managers of the Debtor or the Reorganized Debtor, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtor, including the New Equity, the New Organizational Documents,

and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section G shall be effective notwithstanding any requirements under non-bankruptcy law.

H.      *New Organizational Documents.*

On the Effective Date, or following the entry of the Confirmation Order and prior to the Effective Date, the organizational documents of the Debtor shall be amended, amended and restated, or replaced as may be necessary to effectuate the transactions contemplated or permitted by the Plan. On the Effective Date, or following the entry of the Confirmation Order and prior to the Effective Date, the Reorganized Debtor will file its New Organizational Documents with the applicable Secretary of State or applicable authority in its respective state or country of incorporation if and to the extent required in accordance with the corporate laws of the respective state or country of incorporation. The New Organizational Documents will prohibit the issuance of non-voting equity securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code. For the avoidance of doubt, the New Organizational Documents shall be included as exhibits to the Plan Supplement. After the Effective Date, the Reorganized Debtor may amend and restate New Organizational Documents, and the Reorganized Debtor may file its respective certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the New Organizational Documents.

I.      *New Equity Interests.*

Reorganized Debtor is authorized to distribute and shall distribute, the New Equity without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person. The New Equity Interests shall be issued and distributed free and clear of all Liens, claims, and other interests.

Acceptance of New Equity shall be deemed to constitute its agreement to be bound by the New Organizational Documents, as the same may be amended, supplemented, or modified from time to time following the Effective Date in accordance with their terms. The New Organizational Documents shall be binding on all holders of the New Equity (and their respective successors and assigns), whether such New Equity are received or to be received on or after the Effective Date and regardless of whether such holder executes or delivers a signature page to the New Organizational Documents. Notwithstanding the foregoing, Reorganized Debtor may condition the receipt of any New Equity issued pursuant to the Plan upon the receipt of duly executed counter - signature pages to the Organizational Documents.

All of the New Equity issued and/or distributed pursuant to the Plan shall be duly authorized, validly issued, and, as applicable, fully paid, and non-assessable. Each distribution and issuance of the New Equity and Warrants under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

J.      *Directors and Officers of the Reorganized Debtor.*

As of the Effective Date, the term of the current members of the board of directors of the Debtor shall expire, and the members for the initial term of the New Board shall be appointed. The initial members of the New Board will be identified in the Plan Supplement, to the extent known at the time of filing. Each such member and officer of the Reorganized Debtor shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtor. The New Board shall consist of [placeholder] members.

K.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtor and the New Board are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents

and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

L.      *Certain Securities Law Matters.*

Shares of New Equity issued under the Plan will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance upon Section 1145 of the Bankruptcy Code. Shares of New Equity issued under the Plan in reliance upon section 1145 of the Bankruptcy Code are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities. Pursuant to section 1145 of the Bankruptcy Code, the New Equity issued under the Plan: (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act; and (b) is freely tradable and transferable by any holder thereof that (i) is not an "affiliate" of the Reorganized Debtor as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within ninety (90) days of such transfer, (iii) has not acquired the New Equity from an "affiliate" within one year of such transfer, and (iv) is not an Entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code. Such New Equity will be freely tradable in the United States by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with applicable securities laws and any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the New Organizational Documents.

The Depository Trust Company shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether such securities are exempt from registration and/or eligible for the Depository Trust Company book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in the Plan, no legal opinion regarding the offering, issuance, and distribution of any Securities contemplated by the Plan, including, for the avoidance of doubt, whether the New Equity is exempt from registration and/or eligible for the Depository Trust Company book-entry delivery, settlement, and depository services shall be required.

M.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtor to the Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtor or the Reorganized Debtor; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, recordation fee or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax, recordation fee or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or governmental assessment.

N.      *Preservation of Causes of Action; Waiver of Avoidance Actions.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including those Causes of Action relating to the North Carolina Litigation, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, including in Article VIII.

The Reorganized Debtor may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against it. The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtor reserves and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in Reorganized Debtor, except as otherwise expressly provided in the Plan, including Article VIII of the Plan. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

O.      *Closing the Chapter 11 Case.*

Upon the occurrence of the Effective Date, the Reorganized Debtor shall be permitted to close its Chapter 11 Case.

# ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

1.      <u>Assumption of Executory Contracts and Unexpired Leases</u>

Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease (including those set forth as assumed in the Schedules of Assumed and Rejected Contracts) shall be deemed assumed as of the Effective Date by the Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) was previously assumed, assumed and assigned, or rejected by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is identified as rejected on the Schedules of Assumed and Rejected Contracts; (4) is the subject of a motion to reject that is pending on the Effective Date; or (5) Is otherwise rejected pursuant to the Plan.

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease that is identified as rejected on the Schedules of Assumed and Rejected Contracts shall be deemed rejected as of the Effective Date by the applicable Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code.

Entry of the Confirmation Order by the Bankruptcy Court shall, subject to and upon the occurrence of the Effective Date, constitute a Final Order approving the assumptions, assumptions and assignments, and rejections, as applicable, of the Executory Contracts and Unexpired Leases as set forth in the Plan, and the Schedules of Assumed and Rejected Contracts, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume, assume and assign, or reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Unless otherwise specified in the Plan Supplement, the Schedules of Assumed and Rejected Contracts, or an applicable Bankruptcy Court order, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may be modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtor or the Reorganized Debtor, as applicable, shall have the right to alter, amend, modify, or supplement the Schedules of Assumed and Rejected Contracts identified in Article VI.A of the Plan at any time through and including 45 days after the Effective Date; provided, however, that after the date of the Confirmation Hearing, the Debtor may not subsequently reject any Unexpired Lease previously designated as assumed or assumed and assigned on the Schedules of Assumed and Rejected Contracts absent the consent of the applicable lessor.

To the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party or parties to such Executory Contract or Unexpired Lease to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.    *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against any Debtor or any Reorganized Debtor or its Estate and property, and the Debtor or the Reorganized Debtor and its Estate and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

C.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  At least ten (10) days prior to the Confirmation Hearing, the Debtor shall serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, which will: (1) list the applicable cure amount, if any; (2) describe the procedures for filing objections thereto; and (3) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtor shall file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assumed and the proposed cure amounts.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served and actually received by the Debtor, and its counsel, Schwartz Law PLLC,

at least five (5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such matters.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  If an objection to Cure is sustained by the Bankruptcy Court, the Reorganized Debtor in its sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming it.

D.      *Contracts and Leases Entered Into After the Commencement Date*

Contracts and leases entered into after the Commencement Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, the Reorganized Debtor shall make initial distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as practicable after the Initial Distribution Date; *provided*, *however*, that payments on account of General Unsecured Claims that become Allowed Claims on or before the Effective Date may commence on the Effective Date.

B.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the first Periodic Distribution Date after the Disputed Claim becomes an Allowed Claim.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtor shall establish appropriate reserves for potential payment of such Claims.

C.      *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Delivery of Distributions in General

Except as otherwise provided herein, the Debtor or the Reorganized Debtor, as applicable, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor or the Reorganized Debtor, as applicable; and *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.      Distributions by Distribution Agents

The Debtor or the Reorganized Debtor, as applicable, shall have the authority, in their sole discretion, to enter into agreements with the Distribution Agent to facilitate the distributions required under the Plan.  As a condition to serving as a Distribution Agent, a Distribution Agent must (i) affirm its obligation to facilitate the prompt distribution of any documents, (ii) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan and (iii) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan that are to be distributed by the Distribution Agent.

The Distribution Agent, and its respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives and principals (collectively, the "**Indemnified Parties**") shall be indemnified and held harmless by the Debtor and the Reorganized Debtor, to the fullest extent permitted by law for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of the Distribution Agent solely in its capacity as such; provided, however, that the Debtor and the Reorganized Debtor shall not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence, fraud or reckless, intentional or willful misconduct.  The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

The Debtor or the Reorganized Debtor, as applicable, shall pay to the Distribution Agent all reasonable and documented fees and expenses of the Distribution Agent without the need for any approvals, authorizations, actions or consents.  The Distribution Agent shall submit detailed invoices to the Debtor or Reorganized Debtor, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtor shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtor deems to be unreasonable.  In the event that the Debtor objects to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtor or the Reorganized Debtor, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Debtor or the Reorganized Debtor, as applicable, and a Distribution Agent is unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

4.      Minimum Distributions

Notwithstanding anything herein to the contrary, the Reorganized Debtor shall not be required to make distributions or payments of less than $10 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar or share of New Equity Interests under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar or share of New Membership Interests (up or down), with half dollars and half shares of New Equity Interests or less being rounded down.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim if: (a) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question is or has an economic value less than $5,000, unless such distribution is a final distribution; or (b) the amount to be distributed to the specific Holder of an Allowed Claim on such Periodic Distribution Date does not constitute a final

distribution to such Holder and is or has an economic value less than $10, which shall be treated as an undeliverable distribution under Article VII.C.5 below.

     5.     <u>Undeliverable Distributions</u>

     (a)     Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtor (or their Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor (or their Distribution Agent) is notified in writing of such Holder's then current address, at which time all currently and due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtor, subject to Article VII.C.5(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

     (b)     Failure to Claim Undeliverable Distributions

No later than 210 days after the Effective Date, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of undeliverable distributions. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case stays open. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtor of such Holder's then current address in accordance herewith within the latest of (i) one year after the Effective Date, (ii) 60 days after the attempted delivery of the undeliverable distribution and (iii) 180 days after the date such Claim becomes an Allowed Claim shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or its property. In such cases, (i) any Cash held for distribution on account of Allowed Claims shall be redistributed to Holders of Allowed Claims in the applicable Class on the next Periodic Distribution Date and (ii) any Cash held for distribution to other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

     (c)     Failure to Present Checks

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, no later than 180 days after the issuance of such checks, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of any un-negotiated checks. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case stay open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 240 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or its property. In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

D.     *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the

distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable liens and encumbrances.

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

E.     *Timing and Calculation of Amounts to Be Distributed*

On the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

F.     *Setoffs*

The Debtor and the Reorganized Debtor may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim. In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, equity interests, rights and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such Holder, except as specifically provided herein.

# ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.     *Resolution of Disputed Claims*

1.     <u>Allowance of Claims</u>

After the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim. All settled claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

2.     <u>Prosecution of Objections to Claims</u>

After the Confirmation Date the Debtor or the Reorganized Debtor, as applicable, shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all

Claims, regardless of whether such Claims are in a Class or otherwise; provided, however, this provision shall not apply to Fee Claims.  From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.  The Reorganized Debtor shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

       3.     <u>Claims Estimation</u>

After the Confirmation Date the Debtor or the Reorganized Debtor, as applicable, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

       4.     <u>Expungement or Adjustment to Claims Without Objection</u>

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtor, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

       5.     <u>Deadline to File Objections to Claims</u>

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

B.     *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtor or the Reorganized Debtor under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if (i) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (ii) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM AND PROOFS OF INTEREST FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS AND EQUITY INTERESTS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS AND EQUITY INTERESTS, UNLESS SUCH LATE PROOF OF CLAIM OR EQUITY INTEREST IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE.**

C.      *Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

# ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order.

B.      *Conditions Precedent to Consummation*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof.

1.    The Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be reasonably acceptable to the Debtor.

2.    The Confirmation Order shall have been entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtor.  The Confirmation Order shall provide that, among other things, the Debtor or the Reorganized Debtor, as appropriate, is authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

3.    All actions, documents, certificates and agreements necessary to implement this Plan shall have been affected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

C.      *Waiver of Conditions*

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtor without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Non-Occurrence of Conditions to Consummation*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgement, offer or undertaking by the Debtor, any Holders or any other Entity in any respect.

# ARTICLE X.

## SETTLEMENT, RELEASE AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtor or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

B.      *Release of Liens.*

Except as otherwise noted in the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtor elect to reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtor, to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

C.      *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing and related prepetition transactions, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or

26

any other related agreement, except for claims related to any act or omission that constitutes actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Nothing in the Plan shall be construed to limit, impair or exculpate any member of the Committee in connection with or in any way related to the Debtor's Claims or Causes of Action in the North Carolina Litigation.

D.     *Injunction.*

*Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to the Plan, shall be discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.*

E.     *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

F.     *Document Retention.*

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with its standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor.

G.     *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

# ARTICLE XI.
## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS AND INTERCOMPANY INTERESTS IN THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

# ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtor and the Plan as legally permissible, including, without limitation, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4. resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5. ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

6. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, *provided* that the Reorganized Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7. enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8. resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9. hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.  issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.  enforce the terms of the Plan;

12.  enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.  resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

14.  enter an order concluding the Chapter 11 Cases.

# ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.      *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

B.      *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.      *Revocation of Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

D.      *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

E.      *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an

admission or waiver of any rights of: (1) any Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

F.    *Further Assurances*

The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

G.    *Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that the Debtor, the Reorganized Debtor or any affected Entity (as applicable) may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

H.    *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by overnight mail to:

> Schwartz Law, PLLC
> Attn: Samuel A Schwartz
> 601 East Bridger Avenue
> Las Vegas, Nevada 89101

I.    *Filing of Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

J.    *Default*

Upon the Effective Date of the Plan, in the event the Debtor fails to timely perform any of the obligations set forth in the Plan, the applicable creditor or party-in-interest shall notify the Debtor and Debtors' counsel of the default in writing in accordance with the notice provisions herein, after which the Debtor shall have: (i) thirty (30) calendar days from the date of the written notification to cure the default; or (ii) if the cure requires more than thirty (30) days, so long as the Debtor initiates steps to cure the default within thirty (30) days and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.  If the Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights it may have under the contract(s) between the parties and/or applicable state law, without further court order or proceeding being necessary.

Dated: December __, 2020

Respectfully submitted,

Islet Sciences, Inc.  a Nevada Corporation


By:    /s/ John Steel, IV
Title:    Chief Executive Officer